UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| TERRY DILLWORTH, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:20-cv-629-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| CHRISTINE WORMUTH, SECRETARY | ) | **ORDER** |
| OF THE DEPARTMENT OF THE | ) | |
| ARMY,[1] | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Motion to Dismiss Plaintiff Dillworth's Second

Amended Complaint filed by Defendant Christine Wormuth, Secretary of the Department of the

Army [R. 23]. Plaintiff responded to the Motion, [R. 26], and Defendant replied [R. 28]. This

matter is fully briefed. For the reasons set forth herein, the Court will deny in part and grant in

part the Motion to Dismiss.

## I.   BACKGROUND

### A.  Procedural Background

Plaintiff Terry Dillworth filed this action on September 4, 2020. [R.1]. In his Complaint,

Dillworth alleged that while being employed at the Civilian Personnel Advisory Center, he was

subjected to retaliation, sex discrimination, and a hostile work environment. *Id.* On November

---

[1] John E. Whitley succeeded Ryan D. McCarthy as Acting Secretary of the Army on January 20, 2021. However, Whitley only served as Secretary until May 28, 2021. The current Acting Secretary of the Army is Christine Wormuth. *See Secretary of the Army: Christine Wormuth*, U.S. ARMY, https://www.army.mil/leaders/sa/bio/ (last visited Nov. 16, 2021). Thus, it is appropriate for the Court to automatically substitute Wormuth as the defendant herein. *See* FED. R. CIV. P. 25(c) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

14, 2020, Dillworth moved to amend his complaint. [R. 6]. His proposed amended complaint included the same claims contained in his first complaint, but added Christine Wormuth, Secretary of the Department of the Army, as a defendant. [R. 6–1]. The Court granted Dillworth's Motion to Amend Complaint. [R. 7]. The Secretary then filed a Motion to Dismiss, contending that the Court lacked subject matter jurisdiction, Dillworth failed to timely exhaust his administrative remedies, and Dillworth failed to state a claim upon which relief can be granted. [R. 15].

Dillworth filed a Response, [R. 16], but subsequently moved to amend his complaint for a second time. [R. 17]. The proposed second amended complaint provided a "more definite recitation of facts" and clarified applicable statutory schemes. *Id.* The parties then entered an Agreed Order in which they requested leave to allow the lodged Second Amended Complaint, to withdraw of the pending motion to dismiss, [R. 15], as moot based on the filing of the Second Amended Complaint, and to extend the time for the Secretary to file his Answer or other responsive pleading to Dillworth's Second Amended Complaint. [R. 20]. The Agreed Order was granted by the Court, [R. 21], and Dillworth filed his Second Amended Complaint [R. 22]. Dillworth then moved to dismiss Civilian Personnel Advisory Center as a party to the case. [R. 24]. The Secretary made no objection to the motion, [R. 25], and the Court granted it. [R. 27].

### B.  The Second Amended Complaint

Dillworth's Second Amended Complaint ("Complaint" or "Second Amended Complaint"), [R. 22], alleges the following facts: Dillworth, an African American male, was employed by the Civilian Personnel Advisory Center (CPAC), in Fort Knox, Kentucky, in March 2015. *Id.* ¶¶ 9–10. He was hired as a GS-0201-05, HR Specialist, and prior to 2018, had received excellent performance reviews and yearly promotions. *Id.* ¶ 10. Dillworth's first level supervisor

was Linda Robinson (Robinson), Supervisory HR Specialist (C, R&P), GS-0201-13. *Id.* ¶ 11. At the second level, Dillworth was supervised by Sandra Bussell (Bussell) and Erika Jaskolski (Jaskolski), Director of CPAC, GS-0201-14. *Id.* All of Dillworth's supervisors were female. *Id.*

In 2015, 2017, and 2019-2020, Dillworth was concerned that female employees were receiving better treatment than their male coworkers. *Id.* ¶ 12. In February 2018, Dillworth vocalized his concerns to his superiors. *Id.* In voicing his concerns, Dillworth discussed the incongruent treatment of male employees, the all-female leadership, and the absence of fair treatment and training for male workers. *Id.* Dillworth's grievances, and his male status, aggravated the all-female leadership. *Id.* Consequently, the leadership team began to harass Dillworth, treat him like "a pariah," and work to disparately impact male employees. *Id.*

Sometime around March 3, 2018, Dillworth was promoted by Robinson to "full performance level of GS-11." *Id.* ¶ 13. While Dillworth had three years of internship experience prior to this promotion, Robinson intentionally failed to provide him with the necessary training he needed to succeed at this new level. *Id.* Specifically, she failed to provide side-by-side training; training on coding; one-on-one (oral) meetings; time-in-grade training; and explanations of her written remarks on Dillworth's work. *Id.* In the weeks following his promotion, Dillworth continued to voice his concerns regarding the lack of training and the in–office treatment of male staff members. *Id.* ¶ 14. Bussell and Robinson, in turn, continued to conspire against him and succeeded in doing so when he was placed on a Success Plan[2] from October 29, 2018 to January 28, 2019. *Id.*

---

[2] Also known as a Performance Improvement Plan (PIP). [R. 23, p. 3; R. 23-2, p. 1].

From October 2018 to December 2018, Bussell and Robinson alleged that Dillworth had three Priority Placement Program (PPP) reconstructs[3] submitted to the Automated Stopper and Referral System (ASARS).[4] *Id.* ¶ 15. The allegations against Dillworth were based on a "shoddy and inaccurate review of his performance records," as evidenced by the fact that one of the reconstructs was determined to be the fault of the applicant, not Dillworth. *Id.* In addition, the fourth PPP reconstruct, which instigated the PIP, was later found to be "stale," and only used for the purpose of placing Dillworth on the corrective PIP. *Id.* When similar infractions were committed by female team members, no disciplinary actions were taken. *Id.* Instead, female employees received one-on-one training with Bussell. *Id.*

On December 22, 2018, Dillworth took on the role of Human Resources Specialist, GS-0201-11 in CPAC, Branch 1: Classification, Recruitment, and Placement. *Id.* ¶ 16. Dillworth attended staff training for the role, which provided him a basic understanding of recruitment strategies. *Id.* ¶ 17. However, he did not receive the guidance and on-the-job training required to perform the complex components of his job, including but not limited to coding and time-in-grade training. *Id.* In contrast, Robinson and Bussell provided female employees with one-on-one training and individualized meetings. *Id.* ¶ 18. In his Second Amended Complaint, Dillworth specifically mentions the following employees: Vivian Rush, Human Resources Specialist, GS-0201-11; Almira Majadas, Human Resources Specialist, GS-0201-11; Tamekia Johnson, Human Resources Specialist, GS-0201-11; Kimberly Biley, HR Specialist (C, R&P), GS-0201-11; and Amy Turner, HR Assistant (C, R&P), GS-0203-07. *Id.* ¶ 18.

---

[3] A reconstruct occurs when a coding error either prevents an applicant (or potential applicant) from applying for a job, rejects an applicant for a job, or terminates a job prior to submission of applications. A reconstruct is the fault of the individual responsible for submitting information into ASARS. [R. 22, p. 4, ¶ 15].

[4] ASARS is a software program used to advertise government jobs that give priority to military spouses and dislocated/overseas workers.  [R. 22, p. 4, ¶ 15].

Dillworth also received a larger amount of work–twenty to thirty more PPP cases–than his female coworkers. *Id.* ¶ 19. While female employees enjoyed downtime, socialized with Robinson and Bussell, and attended specialized trainings, Dillworth was disparately impacted because he was forced to quickly perform his work to keep up with monthly requirements. *Id.* After Dillworth was informed of the PIP, he initiated a formal equal employment opportunity (EEO) complaint on February 11, 2019. *Id.* ¶ 20; [R. 23–1, p. 5]. Consequently, Robinson and Bussell furthered their efforts against him by escalating his workload, causing him to endure even more hardship and increasing his chances of falling behind or making more errors. *Id.* In addition, despite having to learn coding on his own, Robinson and Bussell continued to single Dillworth out by criticizing his coding and disciplining him for his errors. [R. 22, p. 5, ¶ 21].

Dillworth's female coworkers did not receive similar treatment. *Id.* Bussell always provided female employees with side-by-side instruction and guidance, ensuring their daily success. *Id.* ¶ 22. Dillworth's requests for guidance were met with rebuffs and rude responses. *Id.* ¶ 23. Bussell would turn her back on him, fail to provide him with explanations as to her written remarks on his work, and "toss" red-inked paperwork at him without comment or answering his questions. *Id.* These actions were taken in front of coworkers, causing Dillworth embarrassment. *Id.*

On December 5, 2018, Dillworth renewed his complaints to Robinson, his Branch Chief, about Bussell's treatment and requested to be transferred to another department or team. *Id.* ¶ 24. Robinson denied his request then and several times thereafter. *Id.* After reporting Bussell to Robinson, both Robinson and Bussell began to micromanage Dillworth. *Id.* ¶ 25. On a daily basis, they would send him up to seven unnecessary emails and make unreasonable demands,

which not only took time away from his substantive tasks, but also increased the likelihood that he would fail his PIP. *Id.*

Due to being improperly placed on the PIP program, Dillworth was denied his within-grade increases for the months of March and April 2019. *Id.* ¶ 26. His female coworkers who had three to four reconstructs during the same rating cycle were not placed on a PIP. *Id.* ¶ 27. Specifically, Dillworth mentions that Ms. Johnson and Ms. Majadas had "three and four PPP reconstructs" and Ms. Drouin received three reconstructs. *Id.* Despite all this discrimination, Dillworth received positive job performance ratings until after December 2018. *Id.* ¶ 28. However, Dillworth filed a case with the Merit Systems Principle Board (MSPB) for procedural errors on February 5, 2019, and also with the Equal Employment Opportunity Commission (EEOC) for gender discrimination and retaliation on February 12, 2019 and on June 12, 2019. *Id.* ¶ 29; [R. 23–1, pp. 5–6]; [R. 28–1]; *see also Dillworth v. Dep't of the Army*, 2019 MSPB LEXIS 467 (M.S.P.B. February 27, 2019). Since these filings, Dillworth has been subjected to retaliation and a hostile work environment. [R.22, p. 7, ¶ 30]. Gregory Johnson, a male HR Specialist, GS-0201-11, "came forward" and confirmed Plaintiff's claims against Robinson and Bussell. *Id.* at ¶ 31. Dillworth alleges it is also well known in the office that male employees "'pay the price' if Ms. Bussell and Ms. Robinson feel employees have crossed them." *Id.*

Despite providing proper notice and federal regulations making it clear that a doctor's note was not required, Dillworth was wrongfully denied a day's pay when he took a day off due to illness. *Id.* ¶ 32. Robinson and Bussell used this against Dillworth in a performance review. *Id.* Furthermore, when Dillworth requested time off to care for his dying brother, Robinson and Bussell forced him to justify his time off by requiring a printed copy of the obituary, written

proof from the funeral home, and an explanation as to why he was unable to work. *Id.* ¶ 33. This retribution caused Dillworth additional emotional harm. *Id.*

In 2019, and in response to further disciplinary actions, Dillworth's PIP was extended. *Id.* ¶ 34. He was forced to complete a program which allowed Robinson and Bussell to "track" his daily work and to submit to weekly reviews, which did not provide any additional training. *Id.* The tracker hindered Dillworth's work performance, creating more allegations of deficiencies. *Id.* No female employees have been subject to tracking. *Id.* At this time, Dillworth is still treated differently than his female coworkers and micromanaged by Robinson. Recently, Dillworth's emails were deleted, which is believed to be an action that only an individual in leadership can perform. *Id.* ¶ 35.

Dillworth continued to interact with the EEOC throughout Spring 2020. *Id.* ¶ 37. On April 29, 2020, he was provided the option to either have an administrative hearing or request a withdrawal from the EEOC and sue in a U.S. District Court. *Id.* Dillworth chose the latter option. *Id.* His withdrawal was accepted by an Administrative Judge and an Order of Dismissal was issued May 7, 2020. *Id.* On June 9, 2020, the Director of the EEOC Compliance and Complaints Review released the Final Agency Decision (FAD), which found no discrimination. *Id.* ¶ 38. Dillworth was given the right to file an original action in a U.S. District Court, which he exercised on September 4, 2020. *Id.* ¶ 39.

Based on these alleged facts, in Count I, Dillworth asserts a claim of gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.*; in Count II, he claims retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.*; in Count III, he asserts a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.*; and in Count IV he brings a

claim of disparate impact in violation of "Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 1981(a), *et seq.*" *Id.* ¶¶ 40–64.[5]

The Secretary filed a Motion to Dismiss Dillworth's Second Amended Complaint [R. 23]. She argues that the Court lacks subject matter jurisdiction, Dillworth failed to exhaust his administrative remedies prior to filing suit, and Dillworth failed to state a claim on which relief can be granted. *Id.* The Court addresses each argument in turn.

## II.    Standard of Review

### A.  Federal Rule of Civil Procedure 12(b)(1)

A motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure asserts that the court lacks subject matter jurisdiction. Motions to dismiss for lack of subject matter jurisdiction fall into two categories: facial attacks and factual attacks. *United States v. Richie*, 15 F.3d 592, 598 (6th Cir. 1994). A *facial* attack is a challenge to the sufficiency of the pleading itself. *Id.* "On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235–37 (1974)). If those allegations establish federal claims, jurisdiction exists. *Gentek Bldg. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A *factual* attack is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction. *Richie*, 15 F.3d at 598. With a factual attack, "no presumptive truthfulness applies to the factual allegations" and "the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* In its review, the district court has wide

---

[5] Confusingly, Dillworth cites to "Title VII of the Civil Rights Act of 1991," then references 42 U.S.C. § 1981(a). [R. 22, p. 11]. However, *§ 1981(a)* was enacted as part of the Civil Rights Act of 1866, not 1991. The Civil Rights Act of 1991, codified at 42 U.S.C. *§ 1981a*, which includes subsection 1981a(a)(1), amends Title VII to provide certain additional damages for intentional discrimination. Regardless of whether Dillworth brings his disparate impact claim under Title VII, § 1981a, or § 1981(a), it fails for the reasons outlined below in Sections 3(A) and 3(B)(i)(2).

discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts. *Gentek*, 491 F.3d at 330 (citations omitted). As always, the party invoking federal jurisdiction has the burden to prove that jurisdiction exists. *Glob. Tech., Inc. v. Yubei (Xinxiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015) (citation omitted).

Here, the Secretary fails to state whether she presents a "facial" or "factual" attack to this Court's subject matter jurisdiction. However, the Court finds that the Motion raises a facial challenge to Dillworth's Complaint as it does not implicate the factual basis of the disparate impact claim. In other words, the Court did not have to weigh conflicting evidence to determine that it lacks subject matter jurisdiction over this particular claim. *See Richie*, 15 F.3d at 598. As a result, to determine the question of subject matter jurisdiction, the Court takes Dillworth's allegations as true. *Id.*; *see also Boyd v. McHugh*, No. 2:12–cv–03021–JPM–tmp, 2013 U.S. Dist. LEXIS 129400 (W.D. Tenn. Sep. 11, 2013) (where the Court found the defendant's motion to dismiss raised a facial challenge because it did not implicate the factual basis of the plaintiff's age discrimination claim but challenged subject matter jurisdiction on the ground that plaintiff brought the claim under 42 U.S.C. § 1981 instead of the Age Discrimination Employment Act (ADEA), the exclusive remedy for age discrimination claims).[6]

## B. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal for "failure to state a claim upon which relief may be granted." To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

---

[6] While this is an ADEA case, and not a Title VII case, the Court finds it applicable since "courts routinely employ Title VII and ADEA case law interchangeably" due to the similarities between the two statutes. *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834 (6th Cir. 1996) (citations omitted); *see also McKennon v. Nashville Banner Publ. Co.*, 513 U.S. 352, 358 (1995) (quoting *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 756 (1979)) ("The ADEA and Title VII share common substantive features and also a common purpose: 'the elimination of discrimination in the workplace.'").

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible on its face" so long as the complaint's factual allegations "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 577). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). The process of determining if a complaint sufficiently alleges a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). Further, "[t]he complaint is viewed in the light most favorable to the [Plaintiff], the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in [Plaintiff's] favor." *Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016) (citing *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008)).

### III.   Analysis

#### A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction

Count IV of Dillworth's Second Amended Complaint claims disparate impact in violation of 42 U.S.C. § 1981(a). [R. 22, p. 11]. The Secretary argues that because Dillworth failed to administratively exhaust a disparate impact claim, he is now trying to bring the claim "alternatively under 42 U.S.C. Section 1981." [R. 28, p. 1]. The Secretary also contends that Dillworth should be prohibited from doing so since the Supreme Court "foreclosed" this

alternative method "forty–five years ago" in *Brown v. GSA*, 425 U.S. 820 (1976). *Id.* Dillworth

counters that "[t]here is not authority for the proposition that *Brown* would preclude a federal

employee from seeking recovery pursuant to Section 1981(a). On the contrary, the Sixth Circuit

has permitted such claims on several occasions since the passage of Section 1981(a)."

[R. 26, p. 6].

In support of his position, Dillworth cites to two cases: *Johnson v. Potter*, 2009 U.S. Dist.

LEXIS 10934 (W.D. Tenn. Feb. 12, 2009) and *Hudson v. Reno*, 130 F.3d 1193 (6th Cir. 1997),

*overruled in part by Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843 (2001). However,

Dillworth has misinterpreted both cases. Each case addresses a plaintiff's ability to seek damages

under *§ 1981a*, not file a claim under *§ 1981(a)*. In other words, § 1981(a) and § 1981a are two

distinct statutes, outlining distinct rights. 42 U.S.C. § 1981(a) is part of the Civil Rights Act of

1866, and it is preempted in cases like this one by Title VII. *See Brown*, 425 U.S. at 835 (holding

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16(c) provides the exclusive

remedy for claims of discrimination in federal employment); *see also Walker v. Henderson*, 4 F.

App'x 248, 249 (6th Cir. 2001) ("Title VII of the Civil Rights Act of 1964 . . .  provides the

exclusive judicial remedy for claims of discrimination in federal employment. For this reason, a

federal employee alleging employment discrimination may proceed only under Title VII and

may not proceed under § 1981.") (citations omitted). It is also "well–settled that § 1981 redresses

*only* racial discrimination …" *Leon T. v. Fed. Res. Bank*, 823 F.2d 928, 931 (6th Cir. 1987)

(citing *Runyon v. McCrary*, 427 U.S. 160, 168 (1976)) (emphasis added); *see also Shu–Lien*

*Chang v. Sodexho, Inc.*, No. 5:11–cv–935, 2011 U.S. Dist. LEXIS 86581, at *13 (N.D. Ohio

Aug. 7, 2011) (where the court dismissed the plaintiff's gender discrimination claim under §

1981 because it was not redressable under § 1981).

In contrast, § 1981a is part of the Civil Rights Act of 1991. While it provides specific, additional *damages* in cases of intentional discrimination under Title VII, it does not create a separate cause of action from Title VII. *See Pollard*, 532 U.S. at 852 (quoting Civil Rights Act of 1991, 105 Stat. 1071, § 2) ("Congress expressly found that 'additional remedies under Federal law are needed to deter unlawful harassment,'" and therefore, "made clear through the plain language of the [Civil Rights Act of 1991] that the remedies newly authorized under § 1981a were *in addition* to the relief authorized by § 706(g) [of Title VII of the Civil Rights Act of 1964]."); *see also Walker*, 4 F. App'x at 249 (citing 42 U.S.C. § 1981a and holding, "[T]he Civil Rights Act of 1991 did not provide that federal employees could file employment discrimination claims against their employers under § 1981."); *Hoffman v. Honda of Am. Mfg., Inc.*, 191 F.R.D. 530, 532 (S.D. Ohio 1999) ("Congress *expanded the remedies* available to a Title VII plaintiff when it enacted 42 U.S.C. 1981a, as part of the Civil Rights Act of 1991.") (emphasis added).

Dillworth's Second Amended Complaint raises a disparate impact claim for the first time under 42 U.S.C. § 1981(a) in Count IV of his Complaint. [R. 22, p. 11–12]. Because the disparate impact claim arises out of Dillworth's federal employment with the Department of the Army, his exclusive remedy lies under Title VII. Since Dillworth brought this claim pursuant to § 1981, rather than Title VII, Count IV is DISMISSED under FED. R. CIV. P. 12(b)(1) for lack of subject matter jurisdiction.

Relatedly, Dillworth requests a hearing on the Motion to Dismiss and alludes to the necessity of discovery to resolve the Motion. [R. 26, pp. 5–6]. The Court disagrees. The Secretary makes a *facial* challenge to Count IV, not a *factual* challenge—that is, the Secretary argues that Dillworth's disparate impact claim under Count IV is not cognizable under § 1981. [R. 28, p. 1]. It is evident that the Court cannot exercise subject matter jurisdiction over Count IV

of Dillworth's Complaint because, as stated above, the law explicitly and clearly supports the

Secretary's argument. *See Brown*, 425 U.S. at 835. The weighing of evidence was neither

required nor necessary to reach this conclusion. Thus, it would be both pointless and inefficient

to hold a hearing or to allow the parties to engage in discovery on this issue, as neither would

change the determined outcome. Thus, the Court declines Dillworth's request for a hearing and

discovery.

### B.  Motion to Dismiss for Failure to State a Claim

Under Title VII, an employer may not "discriminate against any individual with respect

to his compensation, terms, conditions, or privileges of employment, because of such

individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

### i.  Exhaustion of Administrative Remedies

It is well settled that exhaustion of administrative remedies is a prerequisite to filing a

district court lawsuit alleging discrimination under Title VII, and that a plaintiff may only bring a

Title VII action in district court after he has exhausted the administrative remedies provided

under 42 U.S.C. § 2000e-16. *Holmes v. Sw. Human Res. Agency*, No. 1:17-cv-02266-STA-egb,

2017 U.S. Dist. LEXIS 139742, at *3 (W.D. Tenn. Aug. 30, 2017) (citing *Brown v. GSA*, 425

U.S. 820, 822-33 (1976)). The exhaustion of administrative remedies serves an important public

policy: "The requirement that the plaintiff exhaust administrative remedies prior to instituting

suit is intended to ensure that the [administrative agency] will have been afforded an opportunity

to attempt conciliation and voluntary settlement, the preferred means for resolving employment

discrimination disputes." *Parsons v. Yellow Freight Sys. Inc.*, 741 F.2d 871, 873 (6th Cir. 1984)

(citations and internal quotation marks omitted).

To exhaust, the EEOC "charge must be 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'" *Golden v. Mirabile Investment Corp.*, 724 F. App'x 441, 445 (6th Cir. 2018) (citation omitted). This requirement puts the employers on notice and gives the EEOC the opportunity to investigate or settle the dispute. *Id.* In considering whether a plaintiff adequately included a claim in his EEOC charge, the Court construes the EEOC complaint liberally, and "consider[s] claims that are reasonably related to or grow out of the factual allegations in the EEOC charge." *Id.* (citation omitted). "[W]here the facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998).

In his EEOC charge[7], Dillworth's claim is stated as follows:

> I was discriminated against on 22 December 2018 when I was informed by my branch chief that I failed my rating and would be put on a Personnel Improvement Plan due to having 4 ASARS PPP Reconstructs for the year. No other female employees in the past or present has received this type of treatment for having PPP Reconstructs. One of my female co-workers recently informed me that she had 4 PPP Reconstructs and have not received any counseling or placed on a PIP. I have been discriminated against by my lead, Sandra Bussell. I have been working at the Fort Knox CPAC 4 yrs and I have never received the OJT from my lead that she provides to female employees. She spends hours per week with female employees and has not provided me with one side by side instance in 4 years. I have provided witness statements who can verify my disparate treatment from my lead.

[R. 23-1, p. 6].

On June 12, 2019, Dillworth requested to amend his EEOC complaint to include five claims of retaliation. [R. 28–1, pp. 1–2]. One of the five claims was dismissed because

---

[7] Generally, "a court may not consider matters outside the pleadings in a motion to dismiss." *Gray v. Wal-Mart Stores, Inc.*, No. 3:11-CV-367-H, 2012 WL 4212926, at *2 (W.D. Ky. Sept. 18, 2012). But "where a plaintiff's complaint refers to documents that are later attached to a defendant's motion to dismiss, those documents are considered part of the pleadings." *Id.* Dillworth refers to his EEOC charge in his Complaint, [R. 22, p. 5, ¶ 20], and the Secretary attached it to his Motion to Dismiss [R. 23–1]. Therefore, it is appropriate for the Court to consider it at this stage.

it was not reported to an EEOC Counselor within 45 days of the occurrence of the alleged reprisal. *Id.* at 1. Specifically, the following claim was dismissed by the Equal Employment Opportunity Officer (EEOO): "Was the Complainant, Mr. Terry S. Dillworth, discriminated against based on reprisal (20190107), when on 8 Feb 2019, Ms. Linda Robinson required him to submit medical documentation for one day of illness." *Id.* The following four claims were accepted by the EEOO on August 29, 2019:

> Was the Complainant, Mr. Terry S. Dillworth, discriminated against based on Reprisal, resulting in disparate treatment, when:
>
> 1. On 19 Jul and 19 Aug 2019, he was told by Ms. Judy Drouin that she could help all the other Specialists except him without permission from Ms. Linda Robinson.
> 2. On 2 Aug 2019, he received a Written Counseling from Ms. Linda Robinson for failure to extend a tentative job offer timely.
> 3. On 2 Aug 2019, he was notified by Ms. Linda Robinson that he was the only one required to submit a weekly Request for Personnel Action (RPA) Tracker.
> 4. On 29 Aug 2019, he received a Written Reprimand from Ms. Linda Robinson for failure to work on assigned duties.

*Id.* at 2.

### 1.   Hostile Work Environment

Under Title VII two types of actions may be brought: (1) "discrete discriminatory acts," and (2) claims alleging a "hostile work environment." *Hunter v. Sec'y of United States Army*, 565 F.3d 986, 993–94 (6th Cir. 2009) (quoting *Nat'l R. R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002)). A hostile work environment arises only "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (internal citations and quotation marks omitted). Dillworth's EEOC charge only alleges discrimination based on gender and retaliation. It makes no mention of a hostile work environment. The Court may not entertain new claims that were not

alleged in a plaintiff's EEO filings. *See Steele v. Donahoe*, No. 3:11–cv–124–S, 2011 U.S. Dist. LEXIS 87590, at *2 (W.D. Ky. Aug. 5, 2011) (quoting *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010)) ("As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge."); *see also* 42 U.S.C. § 2000e–5(f)(1).

Further, the discrete acts of discrimination that Dillworth alleged in his charge cannot be expected to prompt the EEOC to investigate into whether Dillworth was being subjected to a hostile work environment. *See Davis*, 157 F.3d at 463; *see also Younis*, 610 F.3d at 362 (6th Cir. 2010) ("[T]he inclusion in an EEOC charge of a discrete act or acts, standing alone, is insufficient to establish a hostile-work-environment claim for purposes of exhaustion."); *Hunter*, 565 F.3d at 994 ("The failure to promote an employee or select him for a training program is a discrete act that cannot alone amount to a hostile work environment.") (citation omitted). Dillworth does not allege any facts to suggest harassment, ridicule, insult, or intimidation. *Compare Paluso v. Perdue*, 2019 U.S. Dist. LEXIS 98615, at *25–26 (W.D. Ky. June 11, 2019) (where the court concluded that a reasonable EEO investigation could, and should, have included the possibility of a hostile work environment within its scope because the plaintiff's EEO filing included not only discrete incidents of discrimination but also allegations of "various incidents of harassment").[8] Instead, Dillworth's EEOC charge focuses exclusively on gender discrimination and retaliation. As a result, Dillworth has not exhausted his administrative remedies with regard to his hostile work environment claim. Thus, Count III is DISMISSED under FED. R. CIV. P. 12(b)(6) for failure to state a claim.

2.   Disparate Impact

---

[8] *See supra* note 6, at 9.

In Count IV, Dillworth raises a disparate impact claim. [R. 22, p. 11]. As explained previously, he confusingly relies on "Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 1981(a)." [9] [R. 22, p. 11]. The Court previously explained that it lacks jurisdiction with respect to any claim brought under § 1981, including subsection 1981(a) or § 1981a. But even if the Court liberally construes his claim as one brought under Title VII (and ignores his clear reference to § 1981(a)), Dillworth's claim likewise fails because he did not exhaust his administrative remedies in advance of bringing a Title VII disparate impact claim.

Under a disparate–impact theory of discrimination, "a facially neutral employment practice may be deemed [discriminatory] without evidence of the employer's subjective intent to discriminate." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003) (citation and internal quotation marks omitted). While a complainant does not need to plead a *prima facie* case showing a (1) facially neutral policy and (2) a disproportionate adverse effect on a protected class, the EEOC charge must include facts to reasonably cause the EEOC to investigate a defendant's policies for discriminatory impact. *Dougal v. Marc Glassman*, No. 1:07-CV-00191, 2008 U.S. Dist. LEXIS 137102, at *7 (N.D. Ohio June 6, 2008) (citing *Pacheco v. Mineta*, 448 F.3d 783, 792 (5th Cir. 2007)). Dillworth failed to do that here. He did not assert, or even mention, in his EEOC charge that a facially neutral employment practice or procedure employed by the Secretary resulted in a disparate impact upon a protected group of which he is a member. Instead, he simply stated he suffered from "disparate treatment" due to gender discrimination. [R. 23–1, p. 5–6]. However, a disparate treatment claim is distinct from a disparate impact claim:

> Liability in a disparate-treatment case 'depends on whether the protected trait … actually motivated the employer's decision.' By contrast, disparate-impact claims 'involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity.'

---

[9] *See supra* note 5, at 8.

*Raytheon*, 540 U.S. at 52 (citations omitted). Thus, Dillworth's EEOC charge does not raise a disparate impact claim.

Furthermore, it fails to invoke the EEOC to investigate one. There is nothing in the charge that would suggest any policy employed by the Secretary resulted in a disparate impact or that the EEOC recognized the complaint as a disparate impact claim. On the contrary, the FAD[10] issued by the EEOC was exclusively focused on Dillworth's gender discrimination claim regarding his placement on a PIP. [R. 23–2]. Consequently, Dillworth's allegations in his EEOC charge fail to support a finding that the EEOC charge adequately raised a disparate impact claim at the administrative stage. *See Hamilton v. Williamson*, No. CIV.A. 07-13401, 2009 WL 929918, at *4–5 (E.D. Mich. Apr. 6, 2009) (where the court found the EEOC was not prompted to investigate a disparate impact claim because neither of the plaintiffs' administrative complaints suggested that policies employed by the defendants resulted in disparate impact).

To accept Dillworth's disparate impact claim, when he wholly failed to raise it during his EEOC proceeding, would "undermine the important policy underlying the exhaustion of administrative remedies requirement." *Id.* at 5; *see also Parsons*, 741 F.2d at 873.  Therefore, the Court finds Dillworth failed to exhaust his administrative remedies with regard to this claim. Count IV is DISMISSED under Rule 12(b)(6) for failure to state a claim.

3.   Discrete Acts of Gender Discrimination

---

[10] *Gray*, *supra* note 6, at 13. Dillworth referred to the Final Agency Decision in his Second Amended Complaint, [R. 22, p. 8, ¶¶ 31, 38], and the Secretary attached it to his Motion to Dismiss [R. 23–2]. Thus, it is appropriate for the Court to consider it at this stage.

In her Motion, the Secretary argues that Dillworth's "discrete gender discrimination claims (other than his claim with regard to his PIP) … should be dismissed on administrative exhaustion grounds." [R. 23, p. 13]. Specifically, the Secretary contends that Dillworth failed to exhaust his gender discrimination claims regarding "training, duties, pay docking for one day, time off, and unnecessary emails/deletion of emails." *Id.* The Court disagrees.

It is clear from Dillworth's EEOC complaint that he sufficiently exhausted a gender discrimination claim. In his EEOC complaint, Dillworth checked the gender discrimination box and provided a written account, which both identified the parties and generally described the actions complained of. [R. 23–1, pp. 5–6]; *see also Golden*, 724 F. App'x at 445. Moreover, his EEOC charge expressly references many of the acts of alleged discrimination the Secretary claims Dillworth failed to include. For instance, his original EEOC charge includes that he has "never received the OJT [on-the-job training] from [his] lead" and that "she spends hours per week with female employees and has not provided [him] with one side by side instance in 4 years." [R. 23–1, p. 6]. His amended EEOC charge included allegations that he was required to submit to weekly tracking and was reprimanded for failure to work on assigned duties. [R. 28–1, p. 2]. These allegations were more than sufficient to put the Secretary on notice of Dillworth's gender discrimination claim. *See Golden*, 724 F. App'x at 445. To now differentiate between Dillworth's EEOC gender discrimination claim and the so-called "other" gender discrimination claims, as the Secretary would like the Court to do, would be to exact a hyper-technical, hair-splitting exhaustion standard that the law simply does not require.

In any event, even if the Court viewed the "training, duties, pay docking for one day, time off, and unnecessary emails/deletion of emails" claims as "other" gender discrimination claims, not expressly alleged within his EEOC charge, Dillworth would still not be prevented from

bringing them before the Court. [R. 23, p. 13]. A court is to construe a EEOC complaint liberally, and therefore, may consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge. *See Golden*, 724 F. App'x at 445. It is evident that, even if the Court viewed them as separate, these "other" gender discrimination claims would relate to the gender discrimination claim described in Dillworth's EEOC complaint. Consequently, the "other" gender discrimination claims will not be dismissed on administrative exhaustion grounds.

### ii.  Retaliation

As mentioned above, Dillworth requested to amend his EEOC complaint on June 12, 2019, to include five claims of retaliation. [R. 28-1, pp. 1–2]. The following four claims were accepted by the EEOO on August 29, 2019:

> Was the Complainant, Mr. Terry S. Dillworth, discriminated against based on Reprisal, resulting in disparate treatment, when:
>
> 1. On 19 Jul and 19 Aug 2019, he was told by Ms. Judy Drouin that she could help all the other Specialists except him without permission from Ms. Linda Robinson.
> 2. On 2 Aug 2019, he received a Written Counseling from Ms. Linda Robinson for failure to extend a tentative job offer timely.
> 3. On 2 Aug 2019, he was notified by Ms. Linda Robinson that he was the only one required to submit a weekly Request for Personnel Action (RPA) Tracker.
> 4. On 29 Aug 2019, he received a Written Reprimand from Ms. Linda Robinson for failure to work on assigned duties.

*Id.* at 2.

The Secretary addresses the four EEOC retaliation claims for the first[11] time in his Reply. [R. 28, p. 2]. He makes two arguments as to how the Court should handle the claims. First, the

---

[11] While Dillworth alluded to the amended EEOC complaint in his Second Amended Complaint, [R. 22, p. 7, ¶¶ 29–30], the Secretary claims she was not fully aware of the document accepting Dillworth's retaliation claims until Dillworth explicitly cited to it in his Response. [R. 28, p. 2, n.1]. Upon learning of the document's existence, the Secretary obtained a copy and attached it to her Reply. [R. 28-1].

Secretary contends that the Court should disregard EEOC claims 1, 2, and 4 because the incidents were not specifically mentioned in Dillworth's federal Complaint, and therefore, Dillworth failed to properly plead his Complaint within 90 days of the FAD. *Id.* at 9. In the alternative, the Secretary argues that all four claims should be dismissed for failure to state a claim because Dillworth cannot establish a causal connection between his protected activity and the alleged retaliatory acts. *Id.* at 9–10. The Court will address each argument in turn.

1.  Failure to Properly Plead

Under 42 U.S.C. § 2000e–16(c), a plaintiff has 90 days after issuance of the FAD to file his complaint in federal court. Here, the FAD issued on June 9, 2020, and Dillworth filed his original Complaint in federal court on September 4, 2020, [R. 1], within the 90-day window. *See Rodney v. Lahood*, 359 F. App'x 634, 637 (6th Cir. 2010) ("In a Title VII case, a federal employee has 90 days from receipt of a [FAD] to file suit in district court.") (citation omitted). The Secretary, however, appears to argue that because Dillworth's Second Amended Complaint does not expressly reference the facts outlined in his EEOC charges 1, 2, and 4, he failed to timely plead such claims in federal court by way of his Second Amended Complaint. Once again, Defendant attempts to exact a pleading standard not supported by the law.

To impose a heightened pleading standard in employment discrimination cases would conflict with FED. R. CIV. P. 8(a)(2), which provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz v. Sorema N.A.*, 534, U.S. 506, 512 (2002) (citing FED. R. CIV. P. 8(a)(2)). "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and grounds upon which it rests.'" *Id.* (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). This liberal pleading standard "rejects the approach that pleading is a game of skill in which one misstep by counsel may be

decisive to the outcome" and instead "accept[s] the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley*, 355 U.S. at 48. Nonetheless, the Supreme Court has also established a "plausibility" standard. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. Thus, although an "Amended Complaint need not present 'detailed factual allegations,' it must allege sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense' could 'draw a reasonable inference'" that a plausible claim for relief has been established. *Keys v. Humana, Inc.*, 684 F.3d 605, 609–10 (6th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678).

"While a plaintiff is not required to plead all of the elements of a *McDonnell Douglas* prima facie case, courts have held that a plaintiff who does so can satisfy the plausibility requirement by pleading facts sufficient to support the elements of a prima facie case." *Vandine v. Trinity Health Sys.*, No. 2:14–cv–1242, 2015 U.S. Dist. LEXIS 119302, at *9 (S.D. Ohio Sep. 8, 2015) (citations omitted); *see also Jodry v. Fire Door Sols.*, LLC, 2020 U.S. Dist. LEXIS 244609, at *11 (M.D. Tenn. Dec. 30, 2020) ("[T]hough a plaintiff is not *required* to plead the *prima facie* case under *McDonnell Douglas*, if a plaintiff does adequately plead her *prima facie* case, then the plausibility requirement is met.") (citation omitted). Put differently, to "survive a motion to dismiss under Rule 12(b)(6), a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *See id.* (citing *Hunter*, 565 F.3d at 992). "To establish a prima facie case of retaliation under Title VII, plaintiff must establish that: (1) he engaged in activity protected by Title VII; (2) the defendants knew that he engaged in this activity; (3) the defendant took an employment action adverse to him; and (4) there was a causal connection between the protected activity and

the adverse action." *Clemons v. Metro. Gov't of Nashville & Davidson Cty.*, 664 F. App'x 544, 547 (6th Cir. 2016).

Addressing the Secretary's specific argument, although Dillworth's Complaint does not expressly allege that Drouin told Dillworth she could not help him, but could help all other Specialists, without Robinson's permission (EEOC charge 1), the Complaint is replete with allegations that Dillworth did not receive the same training as his female co-workers, even after his EEOC charge was filed. [R. 22, ¶¶ 31, 34, 48]. Similarly, while Dillworth's Complaint does not specifically allege he received "Written Counseling" for failure to extend a job offer timely (EEOC charge 2), or that he received a "Written Reprimand" for failure to work on assigned duties (EEOC charge 4), it does contain numerous allegations that he was assigned additional duties compared to his female co-workers (which caused him to fall behind on his assigned duties), that he was subjected to heavy scrutiny, and that he was treated more harshly than his female co-workers—all of which continued after his EEOC charge was filed. [R. 22, ¶¶ 34-36, 49].

Further, while Dillworth does not track the exact language of his amended EEOC charge claims 1, 2, and 4 in his federal Complaint, he certainly tenders more than the "'naked assertion[s]' devoid of 'further factual enhancement'" that *Twombly* and *Iqbal* prohibit. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Dillworth's Complaint asserts factual allegations that could support each element of a prima facie case of retaliation. The Complaint alleges: (1) Dillworth informally complained to Robinson and formally filed an EEOC complaint alleging  gender discrimination within the office; (2) Robinson and Bussell were aware of both Dillworth's informal and formal complaints; (3) adverse employment actions were taken against Dillworth after his complaints, including increased workload and discipline, heightened

criticism, micromanagement, deletion of emails, and a poor performance review; and (4) the

adverse employment actions occurred almost immediately after Dillworth filed his EEOC

complaint and during Dillworth's EEOC process. *See* [R. 22]. Dillworth also includes relevant

dates and identifies key supervisors and coworkers by name and company title.  These

allegations are sufficient to satisfy Rule 8(a) requirements and to sustain a "reasonable

inference" of plausibility. *Iqbal*, 556 U.S. at 678; *see also Swierkiewicz*, 534 U.S. at 514 (where

the Court found the plaintiff's complaint "easily satisfie[d] the requirements of Rule 8(a)"

because it "detailed the events leading up to the plaintiff's termination, provided relevant dates,

and included ages and nationalities of at least some of the relevant persons involved with his

termination."). Consequently, the Court declines to dismiss Count II of Dillworth's Complaint

for failure to state a claim under Rule 12(b)(6), let alone for the level of specificity demanded by

the Secretary. Further, since Dillworth filed his original Complaint within ninety days of the

FAD, his retaliation claim is timely. *See* 42 U.S.C. § 2000e–16(c).

## 2.   Causal Connection

Alternatively, the Secretary argues that "all four of these [EEOC charge] claims should

be dismissed for failure to state a claim upon which relief should be granted because Dillworth

has not alleged sufficient facts to make causation plausible ..." [R. 28, p. 9]. In support of this

argument, the Secretary cites to a handful of cases, all of which addressed whether a plaintiff had

established a prime facie case of causation, the fourth element of a prima facie case of retaliation,

for purposes of surviving a motion for summary judgment. *Id.* at 9–10. None of these cases are

apt in deciding the current Motion to Dismiss under Rule 12(b)(6). The Supreme Court has made

clear, the prima facie case under *McDonnell Douglas* is an *evidentiary* standard, not a *pleading*

requirement. *See Swierkiewicz*, 534 U.S. at 511 ("This Court has never indicated the

requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss."). A Title VII complaint requires no greater "particularity" and "ordinary rules for assessing the sufficiency of a complaint apply." *Id.* (citations omitted). In his Second Amended Complaint, Dillworth alleges he initiated a formal EEOC complaint and "[s]hortly thereafter" defendant engaged in retaliatory acts. [R. 22, ⁋ 20]. He further argues that in 2019, around the time he filed his EEOC charge, his "PIP was extended" and he was subject to additional scrutiny under the "RPA tracker" and other, more "harsh" treatment. *Id.* ⁋⁋ 34, 49. The Court declines to dismiss Dillworth's retaliation claim on the ground that he failed to make a prima facie showing of causation. It is enough, at this stage of the proceeding, that Dillworth properly pleaded a plausible claim of retaliation, including plausible causation, in Count II of his Complaint.

### iii. Gender Discrimination

At the pleading stage, to state a viable claim for gender discrimination, "an employee must allege sufficient factual content from which a court, informed by judicial experience and common sense, could draw the reasonable inference that an employer discriminated against an employee with respect to [his] compensation, terms, conditions, or privileges of employment *because of* [his] … sex." *Gentzler v. Hamilton Cty.*, No. 1:15-CV-295, 2017 U.S. Dist. LEXIS 230352, at *13 (E.D. Tenn. Sep. 20, 2017) (citing *Keys*, 684 F.3d at 610). If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied. *Keys*, 684 F.3d at 610; *see also Pedreira v. Ky. Baptist Homes for Children, Inc.*, 579 F.3d 722, 728 (6th Cir. 2009) (holding that the *McDonnell Douglas* prima facie case is not a pleading requirement and that "the ordinary rules for assessing the sufficiency of a complaint apply").

Again, while a plaintiff is not required to establish a prima facie case at the pleading stage, the Court may look to the elements of a given claim to support its finding of a plausibility. *See Hunter*, 565 F.3d at 992. To establish a prima facie case of gender discrimination under Title VII, plaintiff must establish that: (1) he is a member of a protected group; (2) he was subject to an adverse employment decision; (3) that he was qualified for the position; and (4) he was replaced by a person outside of the protected class. *See Clayton v. Meijer*, 281 F.3d 605, 610 (6th Cir. 2002). As an alternative to satisfying the fourth element of the prima facie case, a plaintiff may show that "[he] was treated differently from similarly situated members of the unprotected class." *Knox v. Neaton Auto Prods. Mfg.*, 375 F.3d 451, 457 (6th Cir. 2004) (citation omitted).

Dillworth's federal Complaint asserts factual allegations that could support each element of a prima facie case of gender discrimination: (1) Dillworth is male; (2) he alleges that he was subject to several adverse employment actions, such as denial of training and placement on a PIP; (3) he started his position at CPAC in 2015, and has since received excellent performance reviews and multiple promotions; and (4) he alleges that his similarly–situated, female colleagues are treated more favorably than him because they receive one–on–one training with supervisors, are not subject to the same level of scrutiny and discipline, and were not placed on PIPs even though several of them received the same amount of reconstructs as him during the same rating cycle. These factual allegations are sufficient for this Court to draw the necessary inference that the plausibility standard has been satisfied. *See Keys*, 684 F.3d at 610; *see also Nelson v. Scotts Co.*, 2005 U.S. Dist. LEXIS 42182, at * 13 (S.D. Ohio Sept. 27, 2005) (where the Plaintiff met her pleading burden as required by Fed. R. Civ. P. 8(a) because she alleged facts that could support each

element of a prima facie case of gender discrimination). Thus, Count I of Dillworth's Complaint will not be dismissed under Rule 12(b)(6).

## IV. Damages

### A. Liquidated Damages

In his Second Amended Complaint, Dillworth requests, among other things, liquidated damages. [R. 22, p. 13]. However, a number of courts have held that such damages are unavailable under Title VII. *See, e.g., Lang v. Seiko Instruments USA*, CIVIL ACTION No. 96–5398, 1997 U.S. Dist. LEXIS 167, at *16 (E.D. Pa. Jan. 10, 1997) ("As liquidated damages are not expressly authorized by the language of Title VII, they are unavailable …"); *Baker v. John Morrell & Co.*, 263 F.Supp.2d 1161, 1183 (N.D. Iowa 2003) ("Title VII, of course, does not contain a liquidated damages provision."); *Suarez v. Sch. Bd. of Hillsborough Cty.*, No. 8:13–cv–1238–T–17MAP, 2015 U.S. Dist. LEXIS 75071, at *15 (M.D. Fla. June 10, 2015) ("Plaintiff is unable to recover liquidated damages because they are unavailable under Title VII."); *Pugh v. City of Okla. City*, No. CIV–15–1070–D, 2015 U.S. Dist. LEXIS 166138, at *4–5 (W.D. Okla. Dec. 11, 2015) ("Defendant correctly asserts that Title VII does not authorize liquidated damages."); *Haag v. Cook Cty. Adult Prob.*, No. 17–C–05403, 2018 U.S. Dist. LEXIS 180533, at *15 (N.D. Ill. Oct. 22, 2018) ("Liquidated damages are not available under either Title VII or the ADA, and [plaintiff] concedes that as well."). The Sixth Circuit has not directly addressed this issue. Thus, the Court may look elsewhere to determine the viability of Dillworth's request for liquidated damages.

In *Lang v. Seiko Instruments USA*, a district court in the Third Circuit examined the very issue of whether liquidated damages were authorized by Title VII, finding they were not. 1997 U.S. Dist. LEXIS 167, at 14–16. First, the court contrasted Title VII with other federal statutes

that expressly include a liquidated damages provision, such as the Equal Pay Act (EPA) and the ADEA. *Id.* at 14. Title VII includes no such express provision for liquidated damages. The court then analyzed the Supreme Court case *United States v. Burke*, 504 U.S. 229, 242 (1992), where the Supreme Court reversed a Sixth Circuit decision that had held backpay (received in settlement of a Title VII lawsuit) excludable from gross income under § 104(a)(2). *Id.* at 14–16. Even though *Burke* was decided before the Civil Rights Act of 1991 added compensatory and punitive damages, *see* 42 U.S.C. § 1981a, to the remedies already available under Title VII, the court reasoned that "the principle for which the *Burke* dicta stands" remained undisturbed. *Id.* at 15. Namely, "that the only remedies available under Title VII are those specifically enumerated in the statute." *Id.* In support of this conclusion, the court cited to a portion of the *Burke* opinion where the Court evaluated the "remedial scheme" of Title VII to determine the available damages. *Id.* (quoting *Burke*, 504 U.S. at 239). In other words, the district court interpreted *Burke*'s analysis as the Court determining remedies based on what was expressly delineated by Congress in the federal statute. *Id.* at 16 ("If anything, the fact that the new remedies were added by means legislative, rather than judicial, merely supports [the] proposition [that the only remedies under Title VII are those that are specifically enumerated]."). Ultimately, the district court held that liquidated damages are not available under Title VII because they are not expressly authorized by the statute. *Id.* at 16; *see also Downey v. Comm'r*, 33 F.3d 836, 838 (7th Cir. 1994) (where the court noted that unlike Title VII, the ADEA, as created by Congress, expressly allowed for the recovery of liquidated damages in addition to lost wages).

This Court is persuaded by the courts above that liquidated damages are not available under Title VII. Thus, the Court holds that because liquidated damages are not expressly

authorized by Title VII, they are unavailable to remedy a Title VII violation. Consequently, the

Court strikes Dillworth's request for liquidated damages pursuant to Title VII.

To the extent that Dillworth confuses back pay with liquidated damages, [R. 26, p. 15],

the Court will not disturb Dillworth's back pay claim as "'[v]ictorious Title VII plaintiffs are

presumptively entitled to back pay until the date judgment has been entered in the case.'" *EEOC*

*v. Wilson Metal Casket Co.*, 24 F.3d 836 (6th Cir. 1994) (citing *Shore v. Federal Express Corp.*,

777 F.2d 1155, 1159 (6th Cir. 1985)).

### B.  Punitive Damages

In his Response, [R. 26, pp. 14-16], Dillworth argues for punitive damages,

notwithstanding his Second Amended Complaint fails to request such damages. [R. 22].

Regardless, punitive damages are not available against a governmental agency in a Title VII

case. *See* 42 U.S.C. § 1981a(b)(1). In 1991, Congress amended Title VII to permit punitive

damages in Title VII actions "where the complaining party demonstrates that the respondent

engaged in a discriminatory practice or discriminatory practices with malice or with reckless

indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. §

1981a(b)(1). The amendment, however, explicitly exempts governments, government agencies,

and political subdivisions from punitive damages. *See* 42 U.S.C. § 1981a(b)(1) ("A complaining

party may recover punitive damages under this section against a respondent (other than a

government, government agency or political subdivision)…"); *see also Robinson v. Runyon*, 149

F.3d 507, 516 (6th Cir. 1998) ("Congress amended Title VII in 1991 to permit punitive damages

in Title VII actions. The amendment however specifically exempted governments, government

agencies and political subdivisions."); *Poe v. Memphis Light, Gas & Water Div.*, No. 98–5942,

1999 U.S. App. LEXIS 32083, at *8 (6th Cir. Nov. 30, 1999) ("Under 42. U.S.C. § 1981a(b)(1),

punitive damages are not recoverable against a government agency in an action under Title VII."). The Department of the Army is a federal government agency within which the United States Army is organized.[12] Thus, contrary to Dillworth's argument, [R. 26, p. 14], Dillworth cannot recover punitive damages under 42 U.S.C. § 1981a(b)(1). Accordingly, the Court will strike Dillworth's demand for punitive damages pursuant to Title VII.

### V.     Conclusion

For the reasons stated above, the Court will deny in part and grant in part the Secretary's Motion to Dismiss [R. 23]. Accordingly, **IT IS HEREBY ORDERED** as follows:

1. The Motion to Dismiss filed by Defendant Wormuth [R. 23] is **DENIED in part** and **GRANTED in part**.

   a. The Motion to Dismiss is **DENIED** as to Count I and Count II.

   b. The Motion to Dismiss is **GRANTED** as to Count III and Count IV.

2. Plaintiff Dillworth's requests for liquidated and punitive damages under Title VII are **STRICKEN**.

This the 2nd day of December, 2021.



CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

---

[12] *U.S. Army*, USA Gov., https://www.usa.gov/federal-agencies/u-s-army (last visited Nov. 29, 2021).